**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Ostanek v. Ostanek***, Slip Opinion No. 2021-Ohio-2319.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2319

OSTANEK, APPELLANT, *v.* OSTANEK, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ostanek v. Ostanek*, Slip Opinion No. 2021-Ohio-2319.]**

*R.C. 3105.171(I) does not contain any explicit language divesting domestic-relations courts of subject-matter jurisdiction over divorce actions and the division of marital property—Any error in a domestic-relations court's exercise of its jurisdiction in issuing an order that divides retirement benefits in a way that modifies a divorce decree in violation of R.C. 3105.171(I) renders the resulting order voidable, not void.*

(No. 2020-1037—Submitted May 12, 2021—Decided July 13, 2021.)

APPEAL from the Court of Appeals for Lake County,

No. 2019-L-140, 2020-Ohio-3930.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from a judgment of the Eleventh District Court of Appeals, we are asked whether an order issued by a domestic-relations court that violates R.C. 3105.171(I) is void for lack of subject-matter jurisdiction.

{¶ 2} When a court has the constitutional or statutory power to adjudicate a particular class or type of case, that court has subject-matter jurisdiction. *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 14. If a court lacks subject-matter jurisdiction over a case, any order issued by that court in that case is void ab initio. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23.

{¶ 3} Article IV, Section 4(B) of the Ohio Constitution grants the General Assembly the power to define the subject-matter jurisdiction of the common pleas courts, stating: "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." The General Assembly exercised that power in granting the common pleas courts, and where applicable, their divisions of domestic relations, subject-matter jurisdiction over divorce actions and the division of marital property. R.C. 2305.01, 2301.03, 3105.011, 3105.17, 3105.171.

{¶ 4} We have recognized that the General Assembly's power to define the subject-matter jurisdiction of the common pleas courts includes the power to deny it altogether by explicitly divesting the court of subject-matter jurisdiction. *See generally Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 9. R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." However, R.C. 3105.171(I) does not explicitly divest the domestic-relations court of its subject-matter jurisdiction. Therefore, any error in the domestic-relations court's exercise of its

jurisdiction in issuing an order that divides retirement benefits in a way that modifies a divorce decree in violation of R.C. 3105.171(I) renders the resulting order voidable, not void. *See Harper* at ¶ 26.

{¶ 5} Appellee, Gregory F. Ostanek, moved to vacate an order that set forth how his federal retirement benefits would be shared with his former spouse, appellant, Julia M. Ostanek. In that motion, he asserted that the order had improperly modified the divorce decree's division of marital property. The trial court denied the motion to vacate, concluding that it had been untimely filed and that the order had not modified the divorce decree. The court of appeals affirmed in part and reversed in part, holding that the order *had* modified the divorce decree and was void (and therefore subject to challenge at any time) because the domestic-relations court lacked subject-matter jurisdiction to modify the divorce decree's division of marital property.

{¶ 6} However, because the domestic-relations court had subject-matter jurisdiction to issue the order, any error in its exercising its jurisdiction in violation of R.C. 3105.171(I) rendered the order voidable, not void. For this reason, we reverse the judgment of the Eleventh District to the extent it determined that the trial court's order was void and remand the cause to the court of appeals for it to review the assignment of error that it declined to address as moot.

### Facts and Procedural History

{¶ 7} Julia and Gregory Ostanek's 23-year marriage ended in divorce on October 17, 2001. In stipulations incorporated into the divorce decree, the Ostaneks agreed that Gregory's pension with the Federal Employees Retirement System would "be divided 50/50 with the court reserving jurisdiction to issue a QDRO [qualified domestic-relations order]." The court clerk served the divorce decree on Gregory at his mother's address, 2250 Greenridge Drive in Wickliffe, Ohio. Gregory had used that address because he had moved out of the marital home, which was located at 2597 Townline Road in Madison, Ohio, and was relocating to

the Washington, D.C. area. Julia lived in the Townline Road home until the Ostaneks sold it in late 2001 as ordered by the divorce decree.

{¶ 8} At the time the court issued the divorce decree, and continuing today, federal law has required the Office of Personnel Management ("OPM"), which administers the Federal Employees Retirement System, 5 U.S.C. 8461, to abide by the terms of a state court's divorce decree providing for federal retirement benefits to be paid to a former spouse, 5 U.S.C. 8345(j)(1). *See also* 5 C.F.R. 838.101(a)(1); 57 Fed.Reg. 33570, 33575, effective Aug. 28, 1992. OPM's regulations require a former spouse seeking eligibility for a court-awarded portion of a federal employee's retirement benefits to submit "[a] certified copy of the court order acceptable for processing ['COAP'] that is directed at employee annuity." 5 C.F.R. 838.221(b); 57 Fed.Reg. at 33578. The regulations further provide that "[i]n executing court orders under [5 C.F.R. 838.101], OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws." 5 C.F.R. 838.101(a)(2).

{¶ 9} On January 10, 2013, the domestic-relations court received a proposed order meant to qualify as a COAP under the federal regulations. The proposed order had been prepared by a company called QDRO Group (then known as QDRO Consultants) exclusively at the direction of Julia's counsel—the same attorney who represented Julia in the divorce action—because Gregory was planning to retire the next month. It was not signed by Gregory or his counsel but indicated that Gregory had been "served per attached." The certificate of service attached to the proposed order stated that Julia's counsel had mailed a copy to Gregory at the former marital home on Townline Road.

{¶ 10} Civ.R. 5 requires pleadings (other than the original complaint) and other papers to be served on an opposing party's attorney or the opposing party if he or she is not represented by counsel. Civ.R. 5(A) and B(1). When service is

made by mail, it must be sent to the person's last known address. Civ.R. 5(B)(2)(c). And Civ.R. 5(B)(2)(e) permits service to be made by "leaving it with the clerk of court if the person has no known address." Julia's attorney did not comply with any of these provisions.

{¶ 11} At oral argument before this court, Julia's counsel explained that he had used the Townline Road address because that was the address listed for Gregory on the court docket from 12 years earlier. He said that he had not retrieved Julia's case file from storage to determine whether he had a more recent address for Gregory, because of the "urgency" of obtaining the order before Gregory retired. Nonetheless, he had a copy of the divorce decree—which both listed the Greenridge Drive address for Gregory on the first page and ordered the sale of the Townline Road home—that he provided to the QDRO Group when he asked it to draft the COAP in 2012. Julia's counsel also represented to this court that he had asked his client for an updated address for Gregory but had not gotten one from her; yet the unrebutted evidence presented in this case shows that Julia knew that the Townline Road property had been sold and that Gregory had moved to Washington, D.C. in 2001. And although counsel faulted Gregory for failing to update his address on file with the court, Gregory had caused the divorce decree to be mailed to the Greenridge Drive address, where Gregory's mother still lived in 2013.

{¶ 12} The domestic-relations court adopted and signed the order, and the clerk filed it on January 22, 2013. Among other things, the order directed OPM to pay Julia 50 percent of the marital portion of Gregory's monthly retirement benefit, with the marital portion calculated by the coverture method, i.e., multiplying the monthly benefit amount by "a fraction, the numerator of which is the total number of months of Creditable Service earned by the Employee during the marriage (from February 25, 1978 to April 23, 2001) and the denominator of which is the total number of months of the Employee's Creditable Service accrued under the Federal Employees Retirement System." (Emphasis sic.) The order also required OPM to

provide Julia a survivor benefit and for Julia and Gregory to share the cost of that benefit equally.

{¶ 13} The domestic-relations court did not direct the clerk to serve the order on Gregory, nor is there an entry on the docket indicating that the clerk served it on him. *See* Civ.R. 58(B) ("When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal"); App.R. 4(A) (setting forth the time for appeal from an order based on the date of service); *State ex rel. Thomas v. Nestor*, ___ Ohio St.3d ___, 2021-Ohio-672, ___ N.E.3d ___, ¶ 8 (explaining that the clerk's failure to serve an entry on a party under Civ.R. 58(B) meant that the party's time period for appealing from the entry had not yet started).

{¶ 14} Gregory retired on January 31, 2013. A few months later, he received a booklet from OPM showing that Julia was receiving $2,065—45 percent—of his monthly retirement benefit. He contacted OPM multiple times but was unsuccessful in changing the apportionment of his retirement benefit. Gregory took no further action until April 5, 2018, when he moved to vacate the 2013 COAP, asserting that he had only recently received a copy of the COAP and that Julia was receiving approximately $1,300 more a month than the parties had contemplated when they settled the divorce action in 2001.

{¶ 15} While his motion was pending, Gregory contacted his representative in Congress about the issue, and after the Congressman inquired into the matter, OPM determined that it had been overpaying Julia; it paid Gregory $58,379.32 and began recouping the overpayment from Julia's monthly payment. However, it required Gregory to repay $18,542 as the cost of providing the survivor benefit from 2013 to 2018 and notified Gregory that going forward, he and Julia would share equally the cost of that benefit. Gregory asked OPM to reconsider this

decision, but his request had not been resolved by OPM as of February 25, 2019 (the date of the hearing on the motion to vacate).

{¶ 16} At the hearing on the motion to vacate, Brian Hogan of the QDRO Group testified that when a divorce decree is silent on the method to be used to calculate the marital share of federal retirement benefits and whether a survivor benefit is included, the QDRO Group defaults to the coverture method and provides for a survivor benefit in drafting a COAP to be submitted to OPM. He opined that using the alternative "frozen" method of calculating Julia's share by finding the present value of Gregory's retirement benefits at the time of the divorce in 2001, she would receive only $722.89 a month. But Hogan cited this court's decision in *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990), as supporting QDRO Group's use of the coverture method as the default rule. He also pointed to OPM's policy of ordering former spouses to share equally the cost of a survivor benefit if the order is silent on the issue. However, he acknowledged that if a COAP does not expressly include a survivor benefit, then OPM will not provide it to the former spouse. *See also* 5 C.F.R. 838.101(a)(2) ("OPM will not supply missing provisions").

{¶ 17} The magistrate found that the motion to vacate was not well-taken, because Gregory had failed to file it within a reasonable time as required by Civ.R. 60(B)(5). The domestic-relations court adopted that determination, but it went further and ruled that the COAP had not enlarged the decree of divorce by calculating Julia's share based on the coverture method and by requiring both parties to share the cost of the survivor benefit. The court pointed to Hogan's testimony as supporting the view that OPM defaults to the coverture method and to including a survivor benefit when a COAP dividing federal retirement benefits is silent on those issues. It therefore denied the motion to vacate.

{¶ 18} The Eleventh District affirmed in part and reversed in part. It rejected Gregory's argument that the COAP was void to the extent that it applied

the coverture method to calculate Julia's share of the federal retirement benefit, holding that using that method did not "vary, diminish, or enlarge the relief granted in the divorce decree." 2020-Ohio-3930, 156 N.E.3d 932, ¶ 43. However, the court of appeals concluded that the domestic-relations court had lacked jurisdiction to modify the divorce decree to grant Julia a survivor benefit at Gregory's expense when the divorce decree did not include it and there was no evidence that the parties had intended it to be included. *Id*. at ¶ 52.

{¶ 19} We accepted Julia's appeal regarding only the following proposition of law:

> Although Ohio Revised Code Section 3105.171(I) provides that property divisions in a domestic relations matter are not subject to further modifications with delineated exceptions, a trial court is not divested of subject-matter jurisdiction relative thereto and, if the trial court errs in violating or exceeding that limitation, the resulting order or judgment is, at most, voidable, not void ab initio.

*See* 160 Ohio St.3d 1447, 2020-Ohio-5169, 156 N.E.3d 913. We declined review of her second proposition of law challenging the court of appeals' conclusion that including the survivor benefit in the COAP had improperly modified the divorce decree.

**Law and Analysis**

*Subject-Matter Jurisdiction*

{¶ 20} We have recognized that the word "jurisdiction," set apart by itself, "is a vague term, ' "a word of many, too many, meanings." ' " *Cheap Escape Co., Inc. v. Haddox*, L.L.C., 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 5, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), quoting *United States v. Vanness*, 85 F.3d 661, 663

(D.C.Cir.1996), fn. 2. It encompasses "[s]everal distinct concepts, including territorial jurisdiction, monetary jurisdiction, personal jurisdiction, and subject-matter jurisdiction," *id*., as well as "jurisdiction over a particular case," *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 18. "The often unspecified use of this polysemic word can lead to confusion and has repeatedly required clarification as to which type of 'jurisdiction' is applicable in various legal analyses." *Id*.

{¶ 21} This case raises a question of subject-matter jurisdiction. "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case," *Corder*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, at ¶ 14, and a court's subject-matter jurisdiction " 'is determined without regard to the rights of the individual parties involved in a particular case,' " *id.*, quoting *Kuchta* at ¶ 19. "Instead, 'the focus is on whether the forum itself is competent to hear the controversy.' " *Id.* at ¶ 14, quoting *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 23; *see also* 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").

{¶ 22} Because subject-matter jurisdiction is a condition precedent to a court's power to adjudicate and render judgment in a case, "[i]f a court acts without jurisdiction, then any proclamation by that court is void." *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998), citing *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988).

{¶ 23} "A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, at ¶ 19. This reference to "[a] court's jurisdiction over a particular case" "involves consideration of the rights of the parties." *Id.* However, " ' "[o]nce a tribunal has

jurisdiction over both the subject matter of an action and the parties to it, '* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' " ' " (Ellipses added in *Pizza*.) *Harper* at ¶ 26, quoting *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854).

{¶ 24} And when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void. *Pratts* at ¶ 12, 21.

*The Subject-Matter Jurisdiction of Common Pleas Courts and their Domestic-Relations Divisions*

{¶ 25} Article IV, Section 4(A) of the Ohio Constitution provides that "[t]here shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state," and Article IV, Section 4(B) states that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." We have recognized that " 'Article IV, Section 4(B) of the Ohio Constitution grants exclusive authority to the General Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas.' " *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 24, quoting *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 2.

{¶ 26} The common pleas courts are courts of general jurisdiction; with narrow exceptions, R.C. 2305.01 grants the courts of common pleas subject-matter jurisdiction over "all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." As we explained in *Ohio High School Athletic Assn.*, "[t]his differentiates the courts of common pleas from other

courts that (again, by statute) have more limited grants of jurisdiction." 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 8.

{¶ 27} Further, R.C. 2301.03 designates, based on the start dates of the terms of office, certain common pleas court judges in certain counties to be "judges of the court of common pleas, division of domestic relations," who have the same powers and jurisdiction as other judges on the common pleas court but are assigned all the divorce, dissolution of marriage, legal separation, and annulment cases. *See* R.C. 2301.03(M)(1) (creating the Lake County Court of Common Pleas, Domestic Relations Division). In addition, R.C. 3105.011(A) provides that "[t]he court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." The General Assembly has granted the common pleas courts, and where applicable, their domestic-relations divisions, subject-matter jurisdiction over divorce actions, R.C. 3105.17, and the division of marital property, R.C. 3105.171. *See generally Bolinger v. Bolinger*, 49 Ohio St.3d 120, 123, 551 N.E.2d 157 (1990).

{¶ 28} The Ostanek's divorce action, which includes the division of their marital property, is a type of case within the domestic-relations court's subject-matter jurisdiction.

{¶ 29} Nonetheless, the General Assembly's power to define the common pleas court's subject-matter jurisdiction includes the power to deny it altogether. We have explained that when a court of common pleas lacks subject-matter jurisdiction, "it is almost always because a statute *explicitly removed* that jurisdiction." (Emphasis added.) *Ohio High School Athletic Assn.*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 9. Generally, this occurs when the General Assembly confers exclusive jurisdiction over a specific subject matter on a particular tribunal, office, or agency. *See, e.g.*, *Corder*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, at ¶ 2 ("The General Assembly has vested the Public Utilities Commission of Ohio ("PUCO") with exclusive jurisdiction over most

matters relating to public utilities, including the rates charged and the services provided"); *State ex rel. Dir., Ohio Dept. of Agriculture v. Forchione*, 148 Ohio St.3d 105, 2016-Ohio-3049, 69 N.E.3d 636, ¶ 25, 29 (pursuant to R.C. 935.20(A), the Ohio Department of Agriculture has exclusive authority to order the quarantine or transfer of dangerous wild animals); *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 16, 21 (under R.C. Chapter 4117, the State Employment Relations Board has exclusive jurisdiction over charges of unfair labor practices).

{¶ 30} R.C. 3105.171(I) does not explicitly remove the domestic-relations court's subject-matter jurisdiction or confer the power to adjudicate an issue exclusively on another tribunal. R.C. 3105.171(I) provides only that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."

{¶ 31} Applying this statute, however, we have stated that a domestic-relations court lacks "jurisdiction" to modify a divorce decree in issuing a QDRO, absent the agreement of the parties. *Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460, ¶ 5, 12, 16. We have also indicated that " '[s]o long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it.' " *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 19, quoting *Bagley v. Bagley,* 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, ¶ 26 (2d Dist.). This is in line with our statements, in the context of prohibition actions, that a court of general jurisdiction can nonetheless patently and unambiguously lack jurisdiction "when the court seeks to take an action or provide a remedy that exceeds its statutory authority." *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 69 (citing cases).

{¶ 32} However, we have more recently refined our understanding of the difference between a trial court's lacking subject-matter jurisdiction over a particular type of case and a court's errant exercise of its jurisdiction in failing to comply with a statutory requirement. For example, in *Harper*, we explained that because common pleas courts have subject-matter jurisdiction over felony cases, a court's failure to properly impose a statutorily mandated term of postrelease control is an error only in the exercise of jurisdiction and does not render the sentence void. 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 41. In *Cincinnati v. Fourth Natl. Realty, L.L.C.*, we rejected the argument that the common pleas court was divested of subject-matter jurisdiction when the claimant failed to serve the attorney general upon challenging the constitutionality of a statute or ordinance in a declaratory-judgment action, because "there is no language in R.C. 2721.12 divesting the trial court of its subject-matter jurisdiction if parties do not complete service on the attorney general within a certain time." ___ Ohio St.3d ___, 2020-Ohio-6802, ___ N.E.3d ___, ¶ 10.

{¶ 33} And in *Ohio High School Athletic Assn.*, we acknowledged that our earlier cases had said that a court lacks "jurisdiction" to review the decisions of voluntary associations, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, at ¶ 10, but we explained that those cases "are best understood as using the term 'jurisdiction' in the loose sense of a court's legal authority to grant the relief sought by the plaintiff based upon the conduct alleged," *id.* at ¶ 12. We held that a common pleas court has subject-matter jurisdiction to review disputes among members of those organizations because "[t]here is no statute that withdraws jurisdiction from common pleas courts to hear claims challenging the rules adopted by voluntary organizations or that vests exclusive jurisdiction over such claims in another court." *Id.* at ¶ 17.

{¶ 34} Similarly, R.C. 3105.171(I) does not contain any explicit statutory language divesting domestic-relations courts of subject-matter jurisdiction over

divorce actions and the division of marital property. Therefore, it does not impose a jurisdictional bar denying domestic-relations courts subject-matter jurisdiction, and any error by such a court in modifying a divorce decree's division of marital property is an error in the exercise of jurisdiction. That error renders the order voidable, not void ab initio.

{¶ 35} We declined to review Julia's proposition of law asserting that the COAP did not modify the divorce decree. Therefore, the court of appeals' conclusion that the domestic-relations court modified the decree by giving Julia a survivor benefit when the decree did not remains the law of the case. *See generally Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15-17. But even though the COAP improperly modified the divorce decree and was unauthorized by law, that error did not render the COAP void ab initio for lack of subject-matter jurisdiction.

**Conclusion**

{¶ 36} When a court has the constitutional or statutory power to adjudicate a particular class or type of case, that court has subject-matter jurisdiction. *Corder*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, at ¶ 14. Article IV, Section 4(B) grants the General Assembly the power to define the subject-matter jurisdiction of the common pleas courts, and the General Assembly exercised that power in granting domestic-relations courts subject-matter jurisdiction over divorce actions and the division of marital property, R.C. 2305.01, 2301.03, 3105.011, 3105.17, 3105.171.

{¶ 37} Although R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses," that language does not explicitly divest the domestic-relations court of subject-matter jurisdiction. The court of appeals therefore erred when it determined that the COAP issued by the domestic-

14

relations court in this case was void because it modified the prior divorce decree. Rather, an error in the exercise of the court's subject-matter jurisdiction renders the error voidable, not void ab initio.

{¶ 38} For this reason, we reverse the judgment of the Eleventh District as to the proposition of law before this court for review, and we remand the matter to that court to review the assignment of error that it did not address.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and FISCHER, DEWINE, STEWART, and BRUNNER, JJ., concur.

DONNELLY, J., concurs in judgment only.

_____

Kubyn & Ghaster, and R. Russell Kubyn, for appellant.

Dworken & Bernstein, Co., L.P.A., and Kenneth J. Cahill, for appellee.

_____