[Cite as *Ostanek v. Ostanek*, 2022-Ohio-2197.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

JULIA M. OSTANEK,

        Plaintiff-Appellee,

- v -

GREGORY F. OSTANEK,

        Defendant-Appellant.

CASE NO. 2019-L-140

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2000 DR 000178

**O P I N I O N**

Decided: June 27, 2022
Judgment: Reversed; remanded.

*R. Russell Kubyn*, Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Kenneth J. Cahill*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Gregory F. Ostanek, has appealed the October 15, 2019 judgment entry denying his Civ.R. 60(B) motion to vacate a January 22, 2013 domestic relations order. This matter is presently before this court on remand from the Supreme Court of Ohio. The judgment is reversed, and the matter is remanded to the trial court for further proceedings.

{¶2} Gregory's 23-year marriage to appellee, Julia M. Ostanek, ended in divorce on October 17, 2001. On the judgment entry of divorce, which had been prepared by Julia's counsel, the address listed for Gregory was his mother's address at 2250

Greenridge Drive in Wickliffe, Ohio. The court clerk served the divorce decree on Gregory at his mother's address. Gregory used his mother's address because he had moved out of the marital home, which was located at 2597 Townline Road in Madison, Ohio, and was relocating to the Washington, D.C. area. Julia lived in the marital home on Townline Road until the Ostaneks sold it in late 2001 as ordered by the divorce decree.

{¶3} In stipulations incorporated into the divorce decree, the Ostaneks agreed that Gregory's pension with the Federal Employees Retirement System "shall be divided 50/50 with the court reserving jurisdiction to issue a QDRO [qualified domestic relations order] if/when the law changes."

{¶4} Federal law requires the Office of Personnel Management ("OPM"), which administers the Federal Employees Retirement System ("FERS"), to abide by the terms of a state court's divorce decree providing for federal retirement benefits to be paid to a former spouse. 5 U.S.C. 8461, 8345(j)(1). *See also* 5 C.F.R. 838.101(a)(1); 57 Fed.Reg. 33570, 33575 (eff. Aug. 28, 1992). OPM's regulations require a former spouse seeking eligibility for a court-awarded portion of a federal employee's retirement benefits to submit "[a] certified copy of the court order acceptable for processing ['COAP'] that is directed at employee annuity[.]" 5 C.F.R. 838.221(a)-(b)(1); 57 Fed.Reg. 33578. The OPM regulations further provide that "[i]n executing court orders under [5 C.F.R. 838.101], OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws." 5 C.F.R. 838.101(a)(2).

{¶5} On January 10, 2013, the trial court received a proposed order meant to qualify as a COAP under the federal regulations. The proposed order had been prepared

by a company called QDRO Group (then known as QDRO Consultants) exclusively at the direction of Julia's counsel—the same attorney who represented Julia in the divorce action—because Gregory was planning to retire the next month. The proposed order was not signed by Gregory or his counsel but indicated that Gregory had been "served per attached." The certificate of service attached to the proposed order stated that Julia's counsel had mailed a copy to Gregory at the former marital home on Townline Road.

{¶6} Among other things, the proposed order directed OPM to pay Julia 50 percent of the marital portion of Gregory's monthly retirement benefit, with the marital portion calculated by the coverture method, i.e., multiplying the monthly benefit amount "by a fraction, the numerator of which is the total number of months of Creditable Service earned by the Employee during the marriage (from February 25, 1978 to April 23, 2001) and the denominator of which is the total number of months of the Employee's Creditable Service accrued under the Federal Employees Retirement System." The proposed order also required OPM to provide Julia a survivor annuity "equal to a pro-rata share" and for Julia and Gregory to divide equally the costs of that annuity.

{¶7} The trial court adopted and signed the order, and the clerk filed it on January 22, 2013. The court did not direct the clerk to serve the order on Gregory, nor is there an entry on the docket indicating that the clerk served it on him.

{¶8} Gregory retired on January 31, 2013. A few months later, he received a booklet from OPM showing that Julia was receiving $2,065—45 percent—of his monthly retirement benefit. Gregory asked OPM to provide him with a copy of the court order that was affecting the division of his pension. OPM provided him only with a court order related to child support for a son who was a minor at the time of the divorce. Gregory

3

was never made aware by OPM that they were utilizing the 2013 COAP. Gregory contacted OPM multiple times but was unsuccessful in changing the apportionment of his retirement benefit.

{¶9} Gregory was first made aware of the 2013 COAP during the first week of January 2018 after retaining local counsel. On April 5, 2018, he filed a motion to vacate the COAP pursuant to Civ.R. 60(B)(5). Gregory averred, inter alia, that he never saw the proposed order prior to its filing; that he had not lived at the former marital home on Townline Road in over eleven years; that Julia knew he lived in Washington, D.C.; that he had only recently received a copy of the COAP when he contacted his present counsel; and that Julia was receiving approximately $1,300 more a month than the parties had contemplated when they settled the divorce action in 2001.

{¶10} While his Civ.R. 60(B)(5) motion was pending, Gregory contacted his representative in Congress about the issue. After the Congressman inquired into the matter, OPM determined that it had been overpaying Julia. OPM reimbursed Gregory $58,379.32 and began recouping the overpayment from Julia's monthly payment. However, OPM also required Gregory to repay $18,542 as the cost of providing the survivor annuity from 2013 to 2018 and notified Gregory that going forward, he and Julia would equally share the cost of that benefit. Gregory asked OPM to reconsider this decision, but his request had not been resolved by OPM as of February 25, 2019 (the date of the hearing on the motion to vacate).

{¶11} Julia did not appear for the hearing before the magistrate. Testimony was given by Gregory and by Brian Hogan of QDRO Group. The magistrate found that the motion to vacate was not well taken because Gregory had failed to file it within a

4

reasonable time as required by Civ.R. 60(B)(5). The trial court adopted that determination and also ruled that the COAP was not inconsistent with the divorce decree. The court therefore denied the motion to vacate.

{¶12} Gregory appealed and advanced two assignments of error:

> [1.] The trial court committed prejudicial error denying defendant-appellant, Gregory F. Ostanek's motion to vacate pursuant to Civ.R. 60(B)(5) upon its opinion that defendant-appellant was not denied due process since appellant failed to cooperate as to the execution of the paperwork necessary for the division of the pension.

> [2.] The trial court committed prejudicial error denying appellant's objection by finding that it was proper that appellant pay for one-half (1/2) the survivorship expense and that it was proper use [sic] the coverture method as required in the "COAP" even though the judgment entry of divorce did not address these issues.

{¶13} On our initial review, this court found merit with a portion of Gregory's second assigned error and overruled his first assigned error as moot. Specifically, we held: "The trial court did not err in approving a COAP that utilized the 'traditional coverture' method of calculating Gregory's monthly annuity. The trial court did err, however, in approving a COAP that granted Julia a survivor annuity and in apportioning half the cost to Gregory. Because this renders the COAP void, the timeliness requirement of Civ.R. 60(B)(5) is irrelevant." *Ostanek v. Ostanek*, 2020-Ohio-3930, 156 N.E.3d 932, ¶ 53 (11th Dist.), *rev'd*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162.

{¶14} The Supreme Court of Ohio accepted Julia's discretionary appeal on the following proposition of law:

> Although Ohio Revised Code Section 3105.171(I) provides that property divisions in a domestic relations matter are not subject to further modifications with delineated exceptions, a trial court is not divested of subject-matter jurisdiction relative

5

> thereto and, if the trial court errs in violating or exceeding that limitation, the resulting order or judgment is, at most, voidable, not void ab initio.

*Ostanek*, 2021-Ohio-2319, at ¶ 19. The Supreme Court agreed with the proposition of law, concluding that "because the domestic-relations court had subject-matter jurisdiction to issue the order, any error in its exercising its jurisdiction in violation of R.C. 3105.171(I) rendered the order voidable, not void." *Id.* at ¶ 6. For this reason, the Supreme Court reversed our judgment "to the extent [we] determined that the trial court's order was void" and remanded the cause for this court to review the first assigned error, which we had previously declined to address as moot. *Id.*

{¶15} Under his first assigned error, Gregory argues the trial court erred in denying his Civ.R. 60(B)(5) motion for relief from judgment.

{¶16} "[T]he determination of whether relief from judgment should be granted is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion implies that the trial court's attitude was unreasonable, unconscionable, or arbitrary." *Classic Oldsmobile, Inc. v. 21st Century Painting, Inc.*, 11th Dist. Lake No. 98-L-040, 1999 WL 545750, *3 (Feb. 12, 1999), citing *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987).

{¶17} To prevail on a Civ.R. 60(B) motion, the movant must show that (1) he or she has a meritorious claim or defense to present if relief is granted; (2) he or she is entitled to relief under one of the grounds set forth under Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where relief is sought under Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order, or proceeding was

6

entered. *GTE Automatic Elec. Inc. v. ARC Indus., Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶18} Regarding the first prong of the *GTE* test, "the burden on the party seeking relief from judgment is only to *allege* operative facts, of sufficient evidentiary quality, which would constitute a meritorious defense if found to be true." (Emphasis sic.) *Classic Oldsmobile* at *3, citing *Fouts v. Weiss-Carson*, 77 Ohio App.3d 563, 565, 602 N.E.2d 1231 (11th Dist.1991).

{¶19} Pursuant to R.C. 3105.171(I), "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court *except upon the express written consent or agreement to the modification by both spouses*." (Emphasis added.) Gregory argued before the trial court that the COAP is inconsistent with and a modification of the divorce decree, which occurred not only without his consent or agreement, but without notice to him and an opportunity to be heard. In his affidavit attached to his motion, Gregory averred that he never saw the proposed order and that Julia is receiving approximately $1,300 more each month than the parties had contemplated when they settled the divorce action in 2001. Accordingly, Gregory has alleged a meritorious defense under the first prong of the *GTE* test.

{¶20} As to the second prong of the *GTE* test, Gregory sought relief from judgment pursuant to the general provision of Civ.R. 60(B)(5): "any other reason justifying relief from the judgment." "Civ.R. 60(B)(5) may be invoked only in extraordinary and unusual circumstances when the needs of justice demand." (Citation omitted.) *Ohio Cas. Ins. Co. v. Valaitis*, 11th Dist. Lake No. 2011-L-062, 2012-Ohio-2561, ¶ 29. Civ.R. 60(B)(5) is properly used to vacate a judgment entered without notice to a party. *E.g., Nichols v.*

7

Case No. 2019-L-140

*Sidney Motors*, 61 Ohio App.3d 590, 591, 573 N.E.2d 701 (9th Dist.1988), citing *Steadley v. Montanya*, 67 Ohio St.2d 297, 423 N.E.2d 851 (1981) ("The Ohio Supreme Court has consistently held that when a party has not been notified of the entry of a judgment and the time for appeal elapses because there is a lack of notice, such party is entitled to relief from that judgment.") and quoting *Moldovan v. Cuyahoga Cty. Welfare Dept.*, 25 Ohio St.3d 293, 296, 496 N.E.2d 466 (1986) ("'* * * [W]e find that failure to give reasonable notice of final appealable orders is a denial of the right to legal redress of injuries created by Section 16, Article I of the Ohio Constitution in all pending and future cases. * * *'"); *see also Baek v. Cincinnati*, 43 Ohio App.3d 158, 539 N.E.2d 1149 (1st Dist.1988) ("the city's substantiated assertion that it was deprived of its right to appeal by the trial court's failure to give reasonable notice of the entry of judgment against it gives rise to a valid claim of entitlement to relief under Civ.R. 60(B)(5)").

**{¶21}** As grounds, Gregory contends he was denied his fundamental right to due process with respect to the division of his pension because he was never served with the COAP by Julia's counsel or the trial court.

**{¶22}** Civ.R. 5 requires pleadings (other than the original complaint) and other papers to be served on an opposing party's attorney or the opposing party if he or she is not represented by counsel. Civ.R. 5(A) and B(1). *See also Smith v. Hilt*, 2016-Ohio-7340, 72 N.E.3d 1108, ¶ 19-20 (6th Dist.) (holding that a proposed consent judgment entry was required to be served because it was a "written notice, * * * demand, offer of judgment, [or] similar paper" as provided in Civ.R. 5(A)). When service is made by mail, it must be sent to the person's last known address. Civ.R. 5(B)(2)(c). And Civ.R. 5(B)(2)(e) permits service to be made by "leaving it with the clerk of court if the person

8

Case No. 2019-L-140

has no known address." Julia's attorney did not comply with any of these provisions. At oral argument, Julia's counsel explained that he had used the Townline Road address because that was the address listed for Gregory on the court docket from twelve years earlier. Nonetheless, he had a copy of the divorce decree—which both listed the Greenridge Drive address for Gregory on the first page and ordered the sale of the Townline Road home—that he provided to the QDRO Group when he asked it to draft the COAP in 2012. Additionally, the unrebutted evidence presented in this case shows that Julia knew that the Townline Road property had been sold and that Gregory had moved to Washington, D.C. in 2001. And although counsel faulted Gregory for failing to update his address on file with the court, Gregory had caused the divorce decree to be mailed to the Greenridge Drive address, where his mother still lived in 2013.

{¶23} In its entry, the trial court wrote that "the last address provided by [Gregory] in the instant case was given by him as '2597 Townline Rd., Perry OH' in a status affidavit he signed April 23, 2001. There are no further status affidavits of [Gregory] in the case record or any change of address from him." However, the divorce decree was entered six months later, was prepared by Julia's counsel, listed Gregory's address as his mother's address, and was served on him by the clerk at his mother's address. Further, the trial court did not direct the clerk to serve the COAP on Gregory, and there is not an entry on the docket indicating that the clerk served the COAP on Gregory. *See* Civ.R. 58(B) ("When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal").

{¶24} Also in its entry, the trial court wrote:

9

Case No. 2019-L-140

The Defendant argues it made more sense for the Plaintiff to prepare the COAP for receipt of future pension monies. However, said argument absolves the Defendant from any responsibility of cooperation with the Plaintiff as to the execution of the paperwork necessary for his pension division. Said argument flies in the face of the court order which mandated the parties' cooperation with each other. Further, this Judge does not concur with the Defendant's argument. It is the individual whose pension is to be divided who has the superior financial interest in following through with the COAP's preparation and implementation by OPM.

{¶25} In view of OPM's regulations, however, the court's position on this issue is unsupported. The burden is on the former spouse, not the employee, to follow through with the COAP's preparation and implementation: "A former spouse (personally or through a representative) must apply in writing to be eligible for a court-awarded portion of an employee annuity. No special form is required. The application letter must be accompanied by—(1) A certified copy of the [COAP] that is directed at employee annuity; * * *." 5 C.F.R. 838.221(a)-(b); 57 Fed.Reg. 33578. Additionally, due to the lack of proper service or any notice to Gregory, he was not provided an opportunity to cooperate with Julia as to the preparation and implementation of the COAP.

{¶26} For these reasons, we conclude Gregory has satisfied the second prong of the *GTE* test by alleging operative facts demonstrating extraordinary and unusual circumstances as grounds for relief. Gregory was not provided notice or an opportunity to be heard on the proposed order that ultimately divided his federal pension with Julia.

{¶27} Finally, we conclude Gregory has satisfied the third prong of the *GTE* test by filing his motion within a reasonable time. As stated above, the burden was on Julia to prepare and implement the COAP any time after the divorce decree was entered on October 17, 2001. When she finally did so in January 2013, Gregory was not properly

10

served by Julia's counsel or by the court. Upon Gregory's multiple inquiries to OPM, he was not provided with or made aware of the 2013 COAP but was instead provided with an outdated child support order. He was finally made aware of the COAP in January 2018 when his newly retained counsel obtained a copy from the court. Within three months, on April 5, 2018, Gregory had filed his motion to vacate the COAP. Under these circumstances, we disagree with the trial court's conclusion that dismissal of his motion is warranted due to "his own indifference and inaction over 17 years." Gregory was not indifferent and took various actions over the years in his attempt to learn of any relevant court order that had apportioned his retirement benefits. Gregory's motion was filed within a reasonable time after learning of the existence of the COAP.

{¶28} Because Gregory alleged a meritorious claim or defense under R.C. 3105.171(I), is entitled to relief under Civ.R. 60(B)(5), and filed the motion within a reasonable time, the trial court abused its discretion when denying his motion to vacate the 2013 COAP. Accordingly, Gregory's first assigned error has merit.

{¶29} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is reversed. This matter is remanded for further proceedings consistent with this opinion.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

11

Case No. 2019-L-140