[Cite as *Olentangy Commons Owner, L.L.C. v. Fawley*, 2023-Ohio-4039.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Olentangy Commons Owner LLC, | : | |
| Plaintiff-Appellee, | : | No. 22AP-293 |
| | | (M.C. No. 2022CVG008080) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Erin Fawley, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 7, 2023

**On brief:** *Willis Law Firm LLC, Alexander H. Maxwell, William L. Willis, Dimitrios G. Hatzifotinos, Solomon J. Parini*, and *Clint B. Charnes*, for appellee. **Argued:** *Alexander H. Maxwell.*

**On brief:** *The Legal Aid Society of Columbus, Madison A. Hill, Kaci Philpot*, and *Thomas N. Pope*, for appellant. **Argued:** *Madison A. Hill.*

**On brief:** *The Legal Aid Society of Cleveland, Joseph C. Tomino*, and *Matthew D. Vincel*; *Community Legal Aid Services, Inc.*, and *Andrew D. Neuhauser*; *Advocates for Basic Legal Equality, Inc., Michael W. Loudenslager*, and *Matthew N. Currie*; *Legal Aid Society of Southwest Ohio LLC*, and *John E. Schrider, Jr.*; *Southeastern Ohio Legal Services*, and *Peggy P. Lee*, for Amicus Curiae.

APPEAL from the Franklin County Municipal Court

JAMISON, J.

{¶ 1} Defendant-appellant, Erin Fawley, appeals a judgment of the Frankin County Municipal Court granting plaintiff-appellee, Olentangy Commons Owner LLC ("Olentangy

Commons"), restitution of the premises Fawley leased from Olentangy Commons. For the following reasons, we reverse the judgment and remand for further proceedings.

## I. Facts and Procedure

{¶ 2} Fawley leased a residence on Deacon Circle in Columbus, Ohio from Olentangy Commons. Fawley did not pay her rent for March 2022. On March 7, 2022, Olentangy Commons gave Fawley a three-day "Notice to Leave the Premises," as required by R.C. 1923.04. Fawley did not leave. On March 21, 2022, Olentangy filed a forcible entry and detainer action against Fawley in the municipal court.

{¶ 3} On April 27, 2022, Fawley moved to dismiss the forcible entry and detainer action for lack of subject-matter jurisdiction. Fawley argued that Olentangy Commons failed to provide her with a notice to vacate the leased premises at least 30 days prior to filing for eviction, as required by 15 U.S.C. 9058(c)(1). That section is part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which Congress passed in response to the COVID-19 pandemic. It states that "[t]he lessor of a covered dwelling unit may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate." 15 U.S.C. 9058(c)(1). Olentangy Commons did not file a response to Fawley's motion to dismiss.

{¶ 4} Trial before a magistrate occurred on April 27, 2022. Olentangy Commons proved all the evidence necessary to prevail on its forcible entry and detainer action. Fawley argued the motion to dismiss.

{¶ 5} In an April 27, 2022 decision, the magistrate determined that 15 U.S.C. 9058(c)(1) did not bar Olentangy Commons' forcible entry and detainer action. First, the magistrate concluded that 15 U.S.C. 9058(c)(1) did not limit the subject-matter jurisdiction of the municipal court. Second, the magistrate interpreted 15 U.S.C. 9058(c)(1) as requiring a landlord to provide a tenant with a notice to vacate 30 days before a court-ordered set out. Consequently, a landlord could file a forcible entry and detainer action less than 30 days after providing the tenant with a notice to vacate the premises, as long as the set out occurred after the 30-day period elapsed. In this case, the magistrate concluded, the mandate of 15 U.S.C. 9058(c)(1) was satisfied where well over 30 days had passed between service of the notice to vacate on March 7 and the magistrate's April 27 decision, which

granted Olentangy Commons restitution of the premises. The trial court issued a judgment entry adopting the magistrate's decision on May 2, 2022.

{¶ 6} Fawley objected to the magistrate's decision. Olentangy Commons responded to the objection. In a judgment dated May 13, 2022, the trial court overruled the objection. Initially, the trial court rejected Olentangy Commons' argument that 15 U.S.C. 9058(c)(1) had expired. The trial court then held that "assuming for purposes of this decision that the subject premises are a 'covered property' under the CARES Act, the Court finds that the Magistrate set forth a reasonable basis for interpreting [15 U.S.C. 9058(c)(1)] to mean no eviction set out may occur requiring the tenant to vacate during the 30 days after service of the notice to vacate under R.C. 1923.04." (May 13, 2022 Decision & Entry at 2.)

## II. Assignments of Error

{¶ 7} Fawley now appeals the May 13, 2022 judgment, and she assigns the following errors:

> [1.] The lower court erred when it held that Section 4024(c)(1)
> of the Coronavirus Aid, Relief, and Economic Security Act
> only requires that 30 days elapse before the client is set out as
> opposed to requiring a 30-day notice to vacate.

> [2.] The court erred when it held defects in the notice to vacate
> are not jurisdictional.

## III. Motion to Dismiss

{¶ 8} Before addressing the merits of Fawley's assignments of error, we must consider Olentangy Commons' motion to dismiss. According to Olentangy Commons, we should dismiss this appeal because it is moot. Olentangy Commons contends that this appeal became moot when Fawley vacated her apartment.

{¶ 9} After Fawley filed her notice of appeal on May 20, 2022, Olentangy Commons notified her that it was terminating her lease at the end of the lease term—September 8, 2022. Olentangy Commons threatened to evict Fawley if she did not move out of her apartment on or before September 8, 2022. Fawley complied with the terms of her lease and timely vacated her apartment.

{¶ 10} The distinguishing characteristic of a moot case is that it involves no actual, genuine live controversy, the resolution of which can definitely affect existing legal

relations. *State ex rel. Cincinnati Enquirer v. Hunter*, 141 Ohio St.3d 419, 2014-Ohio-5457, ¶ 4; *accord State ex rel. Citizens for Community Values, Inc. v. DeWine*, 162 Ohio St.3d 277, 2020-Ohio-4547, ¶ 7 ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."). (Internal citations and quotations omitted.)   A case may become moot when, during the pendency of the proceedings, an event occurs without the fault of either party, which renders it impossible for the court to grant any relief.  *Tschantz v. Ferguson*, 57 Ohio St.3d 131, 133 (1991). Because it is the duty of judicial tribunals to decide justiciable controversies, courts generally do not decide moot questions.  *State ex rel. Grendell v. Geauga Cty. Bd. of Commrs.*, 168 Ohio St.3d 154, 2022-Ohio-2833, ¶ 9; *accord M.R. v. Niesen*, 167 Ohio St.3d 404, 2022-Ohio-1130, ¶ 10 ("Courts do not review cases that no longer present live controversies.").

{¶ 11} In this case, Fawley appeals a judgment entered against her in an action for forcible entry and detainer.  Such an action provides an aggrieved landlord with an expedited method to recover possession of real property.  *T&R Properties, Inc. v. Wimberly*, 10th Dist. No. 19AP-567, 2020-Ohio-4279, ¶ 8; *Rithy Properties, Inc. v. Cheeseman*, 10th Dist. No. 15AP-641, 2016-Ohio-1602, ¶ 15.  A judgment in an action for forcible entry and detainer only determines the right to immediate possession of the property. *Wimberly* at ¶ 8; *Cheeseman* at ¶ 15.  " 'If immediate possession is no longer at issue because the defendant vacates the premises and possession is restored to the plaintiff, then continuation of the forcible entry and detainer action or an appeal of such an action is unnecessary, as there is no further relief that may be granted.' "  *Wimberly* at ¶ 8, quoting *Cheeseman* at ¶ 15.

{¶ 12} Because Fawley has vacated the apartment at issue in the forcible entry and detainer action, the controversy between the parties is now moot.  *See Wimberly* at ¶ 9 (determining that there was no actual, justiciable controversy between the parties because the tenant had vacated the apartment that was the subject of the eviction action); *Cheeseman* at ¶ 16 (same).  Fawley, however, argues that three exceptions to the mootness doctrine apply to this appeal, thus precluding its dismissal.

{¶ 13} First, Fawley argues that this court should review her appeal because the issues she raises in it are capable of repetition, yet evading review.  This exception to the

mootness doctrine applies "only in exceptional circumstances" where: "(1) the challenged action is too short in duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000).

{¶ 14} Regarding the first element, we have held a forcible entry and detainer action is not too short in duration to be fully litigated through appeal because an appellant may seek a stay of execution of judgment pursuant to R.C. 1923.14(A). *Cheeseman* at ¶ 23. In relevant part, R.C. 1923.14(A) states, "[i]f an appeal from the judgment of restitution is filed and if, following the filling of the appeal, a stay of execution is obtained and any required bond is filed with the court of common pleas, municipal court, or county court, the judge of that court immediately shall issue an order to the sheriff, police officer, constable, or bailiff commanding the delay of all further proceedings upon the execution."

{¶ 15} The holding of *Cheeseman*, however, does not apply in this case. Fawley obtained a stay of the judgment of eviction, albeit through this court rather than the municipal court. She nevertheless had to vacate her apartment because her lease ended. We have recognized previously that "the natural term of a tenant's lease may expire during the pendency of an appeal, requiring the tenant to vacate the premises and allowing the landlord to assert the appeal is moot." *Wimberly* at ¶ 12. That is exactly what occurred in this case. The expiration of the lease rendered the stay Fawley obtained immaterial.

{¶ 16} Olentangy Commons filed its forcible entry and detainer action on March 21, 2022. Fawley's lease expired on September 8, 2022—about five and one-half months later. Olentangy Commons argues that this period was sufficient for Fawley to have fully litigated the action. Given the practical realities of litigation, we are not persuaded. We conclude that Fawley has established the forcible entry and detainer action was too short in duration for her to fully litigate it through appeal before her lease term ended.

{¶ 17} Regarding the second element of the exception, an appellant must establish more than a theoretical possibility that the same action will arise again. *Grandview Heights v. B.S.H.*, 10th Dist. No. 22AP-207, 2023-Ohio-940, ¶ 14; *Croce v. Ohio State Univ.*, 10th Dist. No. 20AP-14, 2021-Ohio-2242, ¶ 23. There must be a reasonable

expectation or demonstrated probability that the same controversy will recur involving the same complaining party. *B.S.H.* at ¶ 14; *Croce* at ¶ 23.

{¶ 18} According to Fawley, she now lives in a different apartment. Because Fawley does not identify the property or its owner, we cannot ascertain whether 15 U.S.C. 9058(c)(1) applies to Fawley's new apartment. Moreover, we can only speculate whether Fawley will fail to pay her rent at that property, thus making her vulnerable to the eviction process.

{¶ 19} Fawley has provided this court with evidence that she got two more three-day notices to vacate from Olentangy Commons after receiving the March 2022 notice to vacate. Before Fawley moved out of her apartment, Olentangy Commons served three-day notices to vacate on Fawley in May and July 2022 for her alleged failure to pay her rent. Thus, Fawley had a reasonable expectation of being subject to the same action that led to this appeal while living at Olentangy Commons. But Fawley is not living at Olentangy Commons anymore. We cannot assume that Fawley's current landlord will give Fawley a three-day notice based on another landlord's conduct.

{¶ 20} Fawley, therefore, has not established that there is a reasonable expectation that she will be subject to the same action again. Consequently, we decline to invoke the exception to the mootness doctrine for appeals that are capable of repetition, yet evade review.

{¶ 21} Next, Fawley argues that the collateral-consequences exception to the mootness doctrine applies. The Supreme Court of Ohio has recognized an exception to the mootness doctrine if the appealed judgment causes the appellant to suffer a collateral disability. *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, ¶ 8. For example, an appeal of a conviction for a traffic offense falls within this exception to the mootness doctrine because, even after the defendant has paid the fines and costs, the statutory imposition of points on the defendant's driver's license constitutes a collateral disability. *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, ¶ 14, 18. However, "the collateral-consequences exception to mootness applies [only] in cases in which the collateral consequence is imposed as a matter of law." *Cyran* at ¶ 9.

{¶ 22} Fawley identifies only one collateral consequence the law imposes because of an eviction: the termination of Section 8 voucher assistance for an eviction from federally

assisted housing. *See Richmond's Ent., Inc. v. Anderson*, 2d Dist. No. 266774, 2016-Ohio-609, ¶ 12, citing 24 C.F.R. 982.552. Fawley does not claim that she will suffer this collateral consequence as a result of her eviction. Instead, she contends that an eviction on her credit report will cause her difficulty in renting another apartment. This consequence, however, is a practical, not a legal, consequence of the judgment Fawley appeals. Therefore, the consequence Fawley claims she will suffer because of the eviction judgment is insufficient to invoke the collateral-consequences exception to the mootness doctrine.

{¶ 23} Finally, Fawley asserts that this court should review her appeal because it raises an issue of great public interest. "Ohio recognizes an exception to the mootness doctrine for cases which present a debatable constitutional question or a matter of great public or general interest." *Tschantz*, 57 Ohio St.3d at 133. Courts of appeals invoke this exception with caution and only on rare occasions. *B.S.H.* at ¶ 19; *Wimberly* at ¶ 15. Nevertheless, this court has previously applied the matter-of-great-interest exception where the issues in the appeal had the potential to affect every landlord, tenant, and property management company in Franklin County. *Wimberly* at ¶ 15.

{¶ 24} The case before this court raises the issue of whether 15 U.S.C. 9058(c)(1) requires lessors of covered properties to give tenants 30-day notices to vacate prior to filing actions for forcible entry and detainer. Fawley argues that this issue is one of great public interest because it impacts large numbers of landlords, tenants, and management companies in Franklin County.

{¶ 25} As we stated above, 15 U.S.C. 9058(c)(1) states, "[t]he lessor of a covered dwelling unit may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate." The statute only applies if a tenant's unit qualifies as a "covered dwelling." *Id.* A "covered dwelling" includes residential tenancies, so long as the rented premises is "on or in a covered property" and the tenant occupies the premises. 15 U.S.C. 9058(a)(1)(A) and (B). The term "covered property" means any property that (1) participates in certain federal housing programs, or (2) has a federally backed mortgaged loan or federally backed multifamily mortgage loan. 15 U.S.C. 9058(a)(2)(A) and (B).

{¶ 26} The covered federal housing programs are listed in 34 U.S.C. 12491(a) and 42 U.S.C. 1490r. 15 U.S.C. 9058(a)(2)(A) and (B). The list of covered federal housing

programs is expansive and includes public housing (42 U.S.C. 1437d), the Section 8 Housing Choice Voucher Program (42 U.S.C. 1437f), the Section 8 Project-Based Rental Assistance Program (42 U.S.C. 1437f), the Section 202 Supportive Housing for the Elderly Program (12 U.S.C. 1701q), Section 811 Supportive Housing for People with Disabilities (42 U.S.C. 8013), along with many others. 15 U.S.C. 9058(a)(2)(A)(i); 34 U.S.C. 12491(a)(3). Additionally, the list of covered federal housing programs contains a catch-all provision to encompass "any other Federal housing programs providing affordable housing to low- and moderate-income persons by means of restricted rents or rental assistance, or more generally providing affordable housing opportunities, as identified by the appropriate agency through regulations, notices, or any other means." 15 U.S.C. 9058(a)(2)(A)(i); 34 U.S.C. 12491(a)(3)(P).

{¶ 27} Coverage also extends to properties with federally backed mortgage loans and federally backed multifamily mortgage loans, which are loans secured by any lien on a residential property. 15 U.S.C. 9058(a)(4)(A) & (5)(A). Federally backed mortgage loans secure liens on properties that house one to four families, while federally backed multifamily mortgage loans secure liens on properties that house five or more families. *Id.* To qualify as a federally backed mortgage loan or a federally backed multifamily mortgage loan, the loan must be:

> [M]ade in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by any officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary of Housing and Urban Development ["HUD"] or a housing or related program administered by any other such officer or agency, or is purchased or securitized by the Federal Home Loan Mortgage Corporation ["Freddie Mac"] or the Federal National Mortgage Association ["Fannie Mae"].

15 U.S.C. 9058(a)(4)(B) and (5)(B).

{¶ 28} As Fawley points out, because the definition of "covered property" is so broad, there are a large number of covered properties in Franklin County. *See* 15 U.S.C. 9058(a)(2). The covered properties include federally backed loans insured by the Federal Housing Administration ("FHA"), Veterans Administration (38 U.S.C. 3703), and Department of Agriculture (42 U.S.C. 1472(h)). The FHA insures multifamily mortgages through multiple programs. *See, e.g.*, 12 U.S.C. 1713; 12 U.S.C. 1715i; 12 U.S.C. 1215n(f).

As of October 31, 2023, FHA insured the mortgages of 75 properties containing multifamily housing that are located in Franklin County (excluding assisted living facilities and nursing homes). U.S. Department of Housing and Urban Development, *Insured Multifamily Mortgages*, Active MF Insured Mortgage File, https://www.hud.gov/program_offices/housing/comp/mf_fhasl_active (accessed Nov. 3, 2023). Those properties have a total of 11,628 units. *Id.*

{¶ 29} Even more importantly, Fannie Mae- and Freddie Mac-owned loans are encompassed under the definition of "covered property." 15 U.S.C. 9058(a)(4)(B) and (5)(B). The Federal Housing Finance Agency ("FHFA") conducts monthly surveys of mortgage markets and collects data regarding mortgages, including the property price, the cumulative loan-to-value ratio, the terms of the mortgage, the creditworthiness of the borrower, and whether Freddie Mac or Fannie Mae acquired the mortgage. According to the data collected by the FHFA, Freddie Mac or Fannie Mae acquired: (1) 51 percent of the mortgage loans originated in 2018; (2) 52 percent of the mortgage loans originated in 2019; and (3) 62 percent of the mortgage loans originated in the first 6 months of 2020. Federal Housing Finance Authority, *What Types of Mortgages do Fannie Mae and Freddie Mac Acquire?*, https://www.fhfa.gov/Media/Blog/Pages/What-Types-of-Mortgages-Do-Fannie-Mae-and-Freddie-Mac-Acquire.aspx (accessed Nov. 3, 2023). On average, Freddie Mac or Fannie Mae acquired 54 percent of the mortgages originated from 2002 through the first 6 months of 2020. *Id.*

{¶ 30} While the data we rely upon is not part of the record, a court may take judicial notice of adjudicative facts that are not subject to reasonable dispute in that they are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). A court, including an appellate court, may take judicial notice at any stage of the proceedings. Evid.R. 201(F); *State v. Murphy*, 10th Dist. No. 12AP-952, 2013-Ohio-5599, ¶ 23. Because Evid.R. 201(B) is modeled on Fed.R.Evid. 201(B), federal law interpreting the federal rule is appropriate and persuasive authority in interpreting the virtually identical Ohio rule. *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 24. Multiple federal courts have taken judicial notice of data contained in government publications and on government websites.

*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir.2016), quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir.2011) ("recognizing 'the authority of a court to take judicial notice of government websites' "); *United States v. Neal*, 577 Fed.Appx. 434, 452, (6th Cir.2014), fn. 11 (stating that "courts may take judicial notice of government statistics such as United States census data"); *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 703 (10th Cir.2009), fn. 22 (taking judicial notice of data on websites of government agencies); *Fortuna v. Winslow*, 607 F.Supp.3d 29, 36 (Me.2022) (holding that government publications are matters of public record and thus proper subjects of judicial notice); *Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F.Supp.3d 1216, 1220 (S.D.Fla.2018), fn. 4 ("The Court may take judicial notice of government publications and website materials."); *Ross v. Am. Express Co.*, 35 F.Supp.3d 407, 435 (S.D.N.Y.2014), fn. 27 ("Courts may take judicial notice of data contained in Government reports.").

{¶ 31} The data we cite above is a matter of public record, as a list of the multifamily mortgages the FHA insures appears on HUD's official website and the statistics regarding the mortgages acquired by Freddie Mac and Fannie Mae appear on the FHFA's official website.  It cannot be reasonably questioned that each agency's official website is an accurate source for the information provided.  Consequently, pursuant to Evid.R. 201, we take judicial notice of the data published by the FHA and the statistics calculated by the FHFA.

{¶ 32} Although we have examined only a sampling of the types of properties included in the definition of "covered properties," the data demonstrates that numerous covered properties are located in Franklin County.  The prevalence of covered properties in Franklin County means the issue in this case—whether 15 U.S.C. 9058(c)(1) requires a 30-day notice to vacate prior to filing an eviction action—impacts substantial numbers of landlords, tenants, and property managers.  The trial court recognized this, too, stating that "this issue will recur frequently, especially in light of the presumably large number of property owners who have a federally-backed mortgage." (May 13, 2022 Decision & Entry at 2.)  We, therefore, conclude that the exception to the mootness doctrine for cases of great public or general interest applies to this case.

{¶ 33} As a final matter, we must address Olentangy Commons' argument that this appeal is moot because the trial court assumed, but did not decide, that Olentangy Commons' property was a covered property under 15 U.S.C. 9058(a). As we stated above, a case becomes moot when it involves no actual, genuine live controversy, the resolution of which can definitely affect existing legal relations. *Hunter*, 2014-Ohio-5457 at ¶ 4; *Citizens for Community Values*, *Inc.*, 2020-Ohio-4547 at ¶ 7. The trial court had multiple grounds on which it could decide Fawley's motion to dismiss: it could find she did not occupy a covered dwelling, so 15 U.S.C. 9058(c)(1) did not apply to her; it could find that 15 U.S.C. 9058(c)(1) had expired; or it could interpret the text of 15 U.S.C. 9058(c)(1) and decide when on the timeline preceding eviction the lender must provide a 30-day notice to vacate. The trial court assumed that the statute applied so that it could reach the statutory interpretation question. The trial court then interpreted the statute to require the service of a notice to vacate 30 days prior to the court-ordered set out. By assuming that 15 U.S.C. 9058(c)(1) applied, the trial court did not render the controversy between the parties "dead" or moot. The trial court still could, and did, grant relief to the parties—it denied the motion to dismiss and granted a judgment of restitution of the premises. Accordingly, the trial court's assumption did not moot this appeal.

{¶ 34} In the end, we conclude that this appeal became moot when Fawley vacated the apartment at the end of the lease term. Nevertheless, we will address the merits of this appeal under the exception to the mootness doctrine that applies to cases of great general or public interest. We thus deny Olentangy Commons' motion to dismiss.

## IV. Analysis

{¶ 35} By her first assignment of error, Fawley argues that the trial court erred in interpreting 15 U.S.C. 9058(c)(1). We agree.

{¶ 36} The interpretation of a statute is a matter of law, which an appellate court reviews de novo. *State v. Bertram*, ___ Ohio St.3d ___, 2023-Ohio-1456, ¶ 11. Because this appeal involves the interpretation of a federal statute, we must apply federal rules of statutory construction. *Lake Cty. Natl. Bank v. Kosyder*, 36 Ohio St.2d 189, 191 (1973).

{¶ 37} Under settled principles of federal statutory construction, a court must first determine whether the statutory text at issue is plain and unambiguous. *Roberts v. Sea-Land Servs.*, *Inc.*, 566 U.S. 93, 100 (2012); *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

" '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *Arlington Cent. School Dist. Bd. of Edn. v. Murphy*, 548 U.S. 291, 296 (2006), quoting *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Consequently, if a statute is unambiguous, a court applies the statute according to its terms. *Carcieri* at 387.

{¶ 38} According to 15 U.S.C. 9058(c)(1), "[t]he lessor of a covered dwelling unit may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate." Fawley interprets that section to mean that the lessor must wait 30 days after providing the tenant with a notice to vacate before filing an action to evict the tenant. Olentangy Commons interprets the section to mean that a law enforcement officer cannot set out the tenant until 30 days after the tenant has received the notice to vacate. To resolve this dispute, we must determine what type of action by the lessor constitutes "requir[ing] the tenant to vacate the covered dwelling unit." 15 U.S.C. 9058(c)(1).

{¶ 39} In Ohio, an eviction proceeding is known as a forcible entry and detainer action, which is governed by R.C. Chapter 1923. Such actions provide the only legal method by which a landlord can require a residential tenant to vacate the leased premises. *Staley v. Phillips*, 1st Dist. No. C-210438, 2022-Ohio-2112, ¶ 22, 24; *State v. Dennis*, 182 Ohio App.3d 674, 2009-Ohio-2173, ¶ 33 (2d Dist.); *Midkiff v. Adams Cty. Regional Water Dist.*, 409 F.3d 758, 764 (6th Cir.2005). Ohio landlord-tenant law expressly prohibits a landlord from evicting a residential tenant in any other manner. R.C. 5321.15(A) ("No landlord of residential premises shall initiate any act * * * for the purpose of recovering possession of residential premises other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code."). Because a landlord must file a forcible entry and detainer action to require a tenant to vacate the rented premises, the plain language of 15 U.S.C. 9058(c)(1) mandates that a landlord must provide a tenant with a notice to vacate 30 days before filing such an action. Other courts that have interpreted 15 U.S.C. 9058(c)(1) have reached the same conclusion. *See Watson v. Vici Community Dev. Corp.*, W.D.Okla. No. CIV-20-1011-F, 2022 U.S. Dist. LEXIS 55211 (Mar. 28, 2022) ("The CARES Act requires certain landlords to give tenants at least 30 days' notice to vacate a covered dwelling before filing a petition for eviction."); *In re Arvada Village Gardens LP v. Garate*, 2023 Colo. 24, ¶ 17 (2023) ("A

landlord of a property covered by the CARES Act must give thirty days' notice before filing for [forcible entry and detainer] in Colorado."); *Sherwood Auburn*, *L.L.C. v. Pinzon*, 24 Wash. App.2d 664, 679 (2022) ("[T]he plain language of the CARES Act notice provision requires that landlords subject to the act provide a 30-day notice to tenants prior to commencing an unlawful detainer action.").

**{¶ 40}** Olentangy Commons argues—and the trial court found—that the landlord does not "require[ ] the tenant to vacate" until the tenant is set out. (May 13, 2022 Decision & Entry at 2.)  However, the landlord does not order or perform the set out—the court and law enforcement officers do those things.  According to 15 U.S.C. 9058(c)(1), the actor prohibited from requiring the tenant to vacate is "[t]he lessor," not the court or law enforcement officers.  Thus, Olentangy Commons and the trial court's interpretation is not consistent with the plain language of the statute.  *See Pinzon* at 673 (rejecting the argument that 15 U.S.C. 9058(c)(1) simply prohibits state trial courts from evicting tenants during the 30-day period following service of a notice to vacate because "[t]he CARES Act notice provision clearly prohibits the lessor * * *—not a state trial court—from requiring a tenant to vacate a covered housing unit prior to expiration of the notice period").

**{¶ 41}** Olentangy Commons next argues that 15 U.S.C. 9058(c)(1) expired on July 24, 2020.  This argument is based on reading 15 U.S.C. 9058(c) in conjunction with 15 U.S.C. 9058(b).  Together these subsections state:

> (b) **Moratorium.** During the 120-day period beginning on the date of enactment of this Act [enacted March 27, 2020], the lessor of a covered dwelling may not—
>
>> (1) make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant for nonpayment of rent or other fees or charges; or
>>
>> (2) charge fees, penalties, or other charges to the tenant related to such nonpayment of rent.
>
> (c) **Notice.** The lessor of a covered dwelling unit—
>
>> (1)  may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate; and

> (2) may not issue a notice to vacate under paragraph (1) until after the expiration of the period described in subsection (b).

(Emphasis sic.)

{¶ 42} The CARES Act was enacted on March 27, 2020, so the 120-day moratorium created by subsection (b) ended on July 24, 2020. According to Olentangy Commons, the notice provision in 15 U.S.C. 9058(c) expired on the same day as the moratorium provision in 15 U.S.C. 9058(b). We are not persuaded by this argument.

{¶ 43} Unlike the moratorium provision, the notice provision does not include an expiration date. We cannot insert an expiration date in 15 U.S.C. 9058(c) when Congress omitted one from that subsection. *See Lomax v. Ortiz-Marquez*, ___U.S.___, 140 S.Ct. 1721, 1725 (2020) (stating that a court "may not narrow a provision's reach by inserting words Congress chose to omit"). According to the plain language of the statute, the moratorium provision expired, but the notice provision did not. *See Garate* at ¶ 13 (holding that 15 U.S.C. 9058(c)(1) did not expire). Consequently, Olentangy Commons' interpretation of 15 U.S.C. 9058(c) is contrary to the unambiguous text of the statute.

{¶ 44} Moreover, Olentangy Commons' interpretation is nonsensical. Under 15 U.S.C. 9058(c)(2), lessors did not have an obligation to provide a 30-day notice to vacate pursuant to subsection (c)(1) until *after* the moratorium expired. Consequently, 15 U.S.C. 9058(c)(1) did not become operative until July 25, 2020—the day after the moratorium expired. Under Olentangy Commons' interpretation of 15 U.S.C. 9058(b) and (c), the notice provision in subsection (c)(1) is meaningless, as it would have expired on July 24, 2020—a day prior to becoming operational. Thus, Olentangy Commons' interpretation conflicts with the rule that " 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.' " *Corley v. United States*, 556 U.S. 303, 314 (2009), quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (further quotation omitted).

{¶ 45} Finally, the statute's title, "[t]emporary moratorium on eviction filings," does not alter our analysis. 15 U.S.C. 9058. The title references the temporary nature of the moratorium, but is silent regarding the duration of the notice provision. Additionally, " '[t]he title of a statute * * * cannot limit the plain meaning of the text. For interpretative

purposes, [it is] of use only when [it] sheds light on some ambiguous word or phrase.' " *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 221 (1998), quoting *Trainmen v. Baltimore & Ohio RR. Co.*, 331 U.S. 519, 528-29 (1947). Here, the text of 15 U.S.C. 9058(c)(1) contains no ambiguity, so we need not resort to the statute's title for assistance in interpreting it.

{¶ 46} As a final argument, Olentangy Commons maintains that 15 U.S.C. 9058(c)(1) preempts Ohio law, and in doing so, violates the Tenth Amendment to the United States Constitution. Olentangy Commons, however, never made this argument before the trial court. Generally, a party waives the right to raise on appeal an argument it could have raised, but did not, in earlier proceedings. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34. Because Olentangy Commons failed to raise its preemption or constitutional arguments before the trial court, it cannot assert them now on appeal.

{¶ 47} In sum, we conclude that 15 U.S.C. 9058(c)(1) requires that a lessor of covered dwelling must provide a tenant with a notice to vacate 30 days before filing a forcible entry and detainer action. Accordingly, we sustain Fawley's first assignment of error.

{¶ 48} By her second assignment of error, Fawley argues that the trial court erred in concluding that failure to comply with 15 U.S.C. 9058(c)(1) did not deprive the court of subject-matter jurisdiction. We disagree.

{¶ 49} The word "jurisdiction," when set apart by itself, is a vague term, which encompasses several distinct concepts, including subject-matter jurisdiction and jurisdiction over a particular case. *Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, ¶ 20. Subject-matter jurisdiction is "the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 23. A court determines whether subject-matter jurisdiction exists by focusing on whether the forum itself is competent to hear the controversy. *Id.* Determination of subject-matter jurisdiction " 'should be confined to the rules that actually allocate judicial authority among different courts.' " *Ostanek* at ¶ 21, quoting 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, 6 (3d Ed.2017).

{¶ 50} "A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. Jurisdiction over a particular case turns on the rights of the parties involved in the case. *Id.* "[A]n inquiry into a party's ability to *invoke* a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." (Emphasis sic.) *Id.* at ¶ 22.

{¶ 51} Municipal courts are statutorily created in R.C. 1901.01, and their subject-matter jurisdiction is set by statute. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 11; *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 7. R.C. 1901.18(A)(8) grants municipal courts original jurisdiction in "any action of forcible entry and detainer." Municipal courts, therefore, have subject-matter jurisdiction over forcible entry and detainer actions.

{¶ 52} Although the failure to comply with 15 U.S.C. 9058(c)(1) does not factor into a determination of subject-matter jurisdiction, it impacts whether a municipal court has jurisdiction over a particular case. A landlord who does not provide a 30-day notice to vacate as required by 15 U.S.C. 9058(c)(1) cannot invoke the subject-matter jurisdiction of the municipal court. *See Pinzon* at 681, fn. 12 (because the landlord did not give a 30-day notice, it could not avail itself of the superior court's subject-matter jurisdiction). Thus, due to the landlord's failure to comply with the statute, the municipal court cannot exercise jurisdiction over that particular action for forcible entry and detainer.

{¶ 53} In short, a municipal court possesses subject-matter jurisdiction over forcible entry and detainer actions, but will lack jurisdiction over a particular forcible entry and detainer action if the plaintiff failed to provide a 30-day notice to vacate if required by 15 U.S.C. 9058(c)(1). The trial court, therefore, did not err in finding that a failure to comply with 15 U.S.C. 9058(c)(1) could not deprive it of subject-matter jurisdiction. Accordingly, we overrule Fawley's second assignment of error.

## V. Conclusion

{¶ 54} Given our rulings on Fawley's assignments of error, we must reverse the trial court's judgment denying the motion to dismiss. Although the trial court may possess subject-matter jurisdiction, dismissal remains the appropriate remedy if the court lacks jurisdiction over the particular case. *See Kuchta* at ¶ 23 (a defect that deprives a trial court

of jurisdiction over a particular case, like lack of standing, "require[s] a court to dismiss the action"). However, as Olentangy Commons points out, a remand is necessary to resolve the factual issue of whether the leased premises constitutes a "covered dwelling unit," thus triggering the obligation to provide a 30-day notice to vacate under 15 U.S.C. 9058(c)(1). Because the trial court assumed but did not decide that this case involved a covered dwelling, the issue remains unresolved. Fawley attached to her motion evidence that she purports establishes that Fannie Mae acquired Olentangy Commons' mortgage of the leased premises through assignment. As a court of review, we cannot determine in the first instance whether this evidence is sufficient to establish the leased premises as a "covered dwelling." *See In re D.R.*, 10th Dist. No. 21AP-697, 2023-Ohio-539, ¶ 37 ("As an appellate court * * *, we will not make factual findings in the first instance.").

{¶ 55} Therefore, for the foregoing reasons, we deny Olentangy Commons' motion to dismiss. We sustain Fawley's first assignment of error and overrule the second assignment of error, and we remand this matter to the Franklin County Municipal Court for further proceedings consistent with the law and this decision.

*Motion to dismiss denied*;
*Judgment reversed*; *cause remanded.*

BEATTY BLUNT, P.J., concurs.
DORRIAN, J., concurs in judgment only.

————————————