[Cite as *Hampton Court, L.L.C. v. French*, 2025-Ohio-1522.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Hampton Court, LLC | Court of Appeals No. L-24-1145 |
| Appellee | Trial Court No. CVG024000125 |
| v. | |
| Lee French | **DECISION AND JUDGMENT** |
| Appellant | Decided: April 29, 2025 |

* * * * *

Douglas A. Wilkins and Michael O'Neill for appellee.

Kelly S. O'Brien and Taylor N. Burns, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, Lee French, appeals from a judgment of the Municipal Court of Toledo, Housing Division, finding in favor of appellee Hampton Court, LLC ("Hampton Court"), on Hampton Court's complaint for eviction. For the reasons that follow, the trial court's judgment is reversed.

## Statement of the Case

{¶ 2}   On September 2, 2021, Ms. French entered into a written lease agreement with Hampton Court to rent the property located at 3125 Ilger Ave., Apartment 319, Toledo, Ohio 43606 ("the Property").

{¶ 3}   The Property is federally subsidized by the U.S. Department of Housing and Urban Development ("HUD"). As a tenant in federally subsidized housing, Ms. French is required to recertify her household income annually. Hampton Court is required to complete this annual recertification in accordance with the lease agreement, federal regulation, and the applicable HUD Handbook.

{¶ 4}   On January 3, 2024, Hampton Court filed a complaint in forcible entry and detainer against Ms. French asserting "non-Compliance of Recertification for [effective] date of 10/1/23." The matter came on for hearing before a magistrate on February 7 and February 21, 2024.

{¶ 5}   On March 14, 2024, the magistrate granted judgment for possession of the Property to Hampton Court, and on March 18, 2024, a writ of restitution was issued. On March 25, Ms. French filed objections to the magistrate's decision, together with a motion to stay the writ pending the trial court's ruling on her objections. The motion to stay was granted on March 27, 2024.

{¶ 6}   On May 22, 2024, the trial court denied Ms. French's objections and granted judgment for possession of the Property in favor of Hampton Court. Ms. French

2.

timely filed this appeal on June 17, 2024. The writ remains stayed, and Ms. French continues to reside in the Property.

## Statement of the Facts

**{¶ 7}** Ms. French has resided at the Property for 20 years. Until November 2023, Ms. French's daughter, Savannah French ("Savannah"), resided at the Property with her.

**{¶ 8}** Hampton Court is a federally subsidized housing provider that receives a monthly assistance payment from HUD on behalf of the tenant. As the owner of a subsidized housing facility, Hampton Court is required to annually reexamine and determine the family income and composition of each tenant receiving Section 8 subsidies. 24 C.F.R. 5.657(a), (b). Tenants are required to "supply any information requested by the owner or HUD for use in a regularly scheduled reexamination or an interim reexamination of family income and composition in accordance with HUD requirements. 24 C.F.R. 5.659(b)(2). Thus, HUD regulations require cooperation between a tenant and a property owner or landlord.

**{¶ 9}** The policies and procedures governing the recertification process are contained in HUD Handbook 4350.3 REV-1: Occupancy Requirements of Subsidized Multifamily Housing Program ("HUD Handbook 4350.3").

**{¶ 10}** All recertifications must be completed prior to the tenant's recertification anniversary date, which is the first day of the month in which a tenant first moved into the property. HUD Handbook 4350.3 at § 7-5A, B1. The recertifications are required so as to ensure that "tenants pay rents commensurate with their ability to pay." *Id.* at § 7-4A.

3.

{¶ 11} Section 7-7 of the HUD Handbook 4350.3 requires owners to provide tenants with multiple written notices regarding a tenant's responsibility to provide information about changes in family income or composition necessary to properly complete an annual recertification. The owner must provide an "Initial Notice" each year that "serves to ensure that tenants understand that they will need to report to the property's management office by the specified date the following year to prepare for their next recertification." *Id.* at § 7-7B.1. "The tenant must sign and date the initial notice to acknowledge receipt[,] the owner or manager must sign and date the notice as a witness," and "[t]he owner must maintain the notice with original signatures in the tenant's file and provide a copy of the signed notice to the tenant." *Id.* at § 7-7B.1.b, c.

{¶ 12} An owner must then send a tenant up to three reminder notices. The first must be provided to the tenant "at least 120 days prior to the tenant's recertification anniversary date" to ensure the tenant is advised of the "the cutoff date by which the tenant must contact the owner and provide the information and signatures necessary for the owner to process the recertification." *Id.* at §§ 7-7B.2.a, 7-B.2.b(5). In addition, the first reminder must "[l]ist the information that the tenant should bring to the interview," and must state that "if the tenant fails to respond before the recertification anniversary date, the tenant will lose the assistance." *Id.* at §§ 7-7B.2.b(4), (7).

{¶ 13} If the tenant fails to respond to the first reminder notice, an owner is obligated to send a second reminder notice no less than 90 days prior to the annual recertification date. *Id.* at § 7-7B.3.a. To the extent that a tenant has still not completed

4.

the required paperwork for certification, the owner is required to send a third reminder notice at least sixty days prior to the recertification date. *Id.* at § 7-7B.4.a.

{¶ 14} The 60-day notice must contain additional information including "the amount of rent the tenant will be required to pay if the tenant fails to provide the required recertification information by the recertification anniversary date and state that this rent increase will be made without additional notice." *Id.* at § 7-7B.4.b(2). The HUD Handbook 4350.3 obligates an owner to maintain a copy of each of the required notices "in the tenant file documenting the date the notice was issued." *Id.* at §§ 7-B.2.c; 7-7B.3.c; 7-7B.4.c.

{¶ 15} If the owner provides all of the required notices and "[t]he tenant reports for the recertification interview on or after the recertification anniversary date[,]" then the '[t]enant is out of compliance." *Id.* at § 7-8D.3.a(2).

{¶ 16} At issue here is Ms. French's 2023 annual recertification. The September 2, 2021 lease document provides that to complete the annual recertification, Hampton Court must request that Ms. French supply information concerning her household income and composition around the first day of May every year. After Ms. French provides this information, "[t]he landlord will verify the information" to recompute the amount of the tenant's assistance payment. Ms. French's annual recertification was due on October 1, 2023.

{¶ 17} The evidence is undisputed that Ms. French did not receive a request for information from Hampton Court around May 1, 2023, nor did she receive a request

5.

during the months of May or June. Instead, Ms. French herself contacted property management via email on July 4 to report changes in her household income. Specifically, Ms. French reported that she was no longer receiving child support and that Savannah had begun working at Texas Roadhouse. In addition, she inquired as to any income documentation that might be required. Ms. French did not receive a response from Hampton Court to her email.

{¶ 18} Ms. French testified that she received a "recertification letter" in July. On August 8, Ms. French sent an email to property management, requesting that the required recertification interview be scheduled for August 23, 2023. Once again, she inquired as to the documentation necessary for Savannah. Ms. French did not receive a response to that email either.

{¶ 19} On August 23, Ms. French and Savannah met in person with property manager Joe Picket to complete Ms. French's annual recertification. At this meeting, Ms. French and Savannah provided documentation regarding the composition and income of their household, including a recertification questionnaire, sworn statements of income and assets, Savannah's status as a full-time college student, and a signed authorization to obtain income verification from Savannah's employer. The only additional document requested by Mr. Picket at that meeting was a self-certified zero income statement, which Ms. French provided later that day.

{¶ 20} After the meeting, Ms. French believed that she was just waiting for Hampton Court to complete the verification process.

6.

{¶ 21} Hampton Court utilizes an internal compliance center to review documents and complete the verification process. Mr. Picket admits that Ms. French's completed packet of information was not sent to Hampton Court's compliance center for processing until September 27, over 30 days after his meeting with Ms. French and only three days before her recertification was due to be completed.

{¶ 22} On October 5, the compliance center notified Mr. Picket that it would need check stubs from Savannah's employer, Texas Roadhouse. The paystubs were necessary because it was impossible to calculate Savannah's average income from the documentation submitted by Texas Roadhouse.

{¶ 23} On or around October 12, Ms. French received a voicemail from Mr. Picket indicating that Hampton Court required four of Savannah's paystubs. A few days later, on October 16, Ms. French was speaking to Mr. Picket in the parking lot, when he told her that Savannah's employer had failed to attach paystubs. The requested paystubs were never provided.

{¶ 24} On November 20, 2023, Picket served upon Ms. French and Savannah a "30-Day Notice of Termination of Lease" for "non-Compliance of Recertification for eff date 10/1/23."

### Assignments of Error

{¶ 25} On appeal, appellant asserts the following assignments of error:

I. The trial court erred as a matter of law by finding Hampton Court's Notice was sufficiently detailed as required by HUD Handbook 4350.3 and the lease agreement.

7.

A. The Notice does not comply with the requirements of HUD Handbook 4350.3 and, therefore, is jurisdictionally deficient.

B. The Notice does not comply with the terms of the written lease agreement and, therefore, is jurisdictionally deficient.

II. The trial court erred as a matter of law by finding Ms. French failed to sufficiently comply with the recertification process.

III. The trial court erred as a matter of law in failing to consider whether Hampton Court served required notices of recertification per the parties' written lease agreement and HUD Handbook 4350.3.

IV. The trial court erred as a matter of law in finding that an eviction action was a permissible consequence of an alleged failure to recertify under the written lease agreement.

V. The trial court erred in finding Hampton Court met its burden of proving Ms. French knowingly provided incomplete or inaccurate information as required by HUD Handbook 4350.3.

## Law and Analysis

{¶ 26} As appellant's third assignment of error is dispositive in this case, we will consider it first in our analysis. Appellant argues in her third assignment of error that because Hampton Court did not provide notice of the recertification process in accordance with HUD Handbook 4350.3, Hampton Court cannot now attempt to evict her for allegedly failing to comply with that process.

## Standard of Review

{¶ 27} "Appellate courts 'generally review a trial court's adoption, denial or modification of a magistrate's decision for an abuse of discretion.'" *In re D.S.,* 2016-Ohio-2810, ¶ 9 (10th Dist.), quoting *Brunetto v. Curtis*, 2011-Ohio-1610, ¶ 10 (10th Dist.). "However, where the appeal from the trial court's action on a magistrate's

8.

decision presents only a question of law, the standard of review is de novo." *In re D.S.* at ¶ 9.

{¶ 28} Because appellant's third assignment of error involves a question of law, it will be reviewed de novo.

**Jurisdiction and Compliance with Federal Notice Requirements**

{¶ 29} R.C. 1901.181 grants municipal court housing divisions original jurisdiction "within the territory of the court in any civil action to enforce any…regulation applicable to premises used or intended for use as a place of human habitation." *Id.* at R.C. 1901.181(A)(1). Thus, there is no question that the housing division of the Toledo municipal court has subject matter jurisdiction over actions by a landlord, where the landlord seeks eviction based on a tenant's failure to comply with federal recertification requirements.

{¶ 30} It has been held, however, in Ohio and elsewhere, that a landlord or property owner's compliance with federal notice requirements is a *jurisdictional prerequisite* for invoking the subject-matter jurisdiction of the municipal court. *See Olentangy Commons Owner LLC v. Fawley*, 2023-Ohio-4039, ¶ 52 (10th Dist.); *Garden Spires Urban Renewal, LP v. Yanford*, 2020 WL 6494641 (Sup.Ct.NJ, App.Div. Nov. 5, 2020). Stated otherwise, a landlord or property owner's failure to comply with federal notice requirements "impacts whether a municipal court has jurisdiction over a particular case." *Fawley* at ¶ 52.

9.

**{¶ 31}** In *Fawley*, the Tenth District Court of appeals found that due to a landlord's failure to comply with a 30-day notice to vacate as required by 15 U.S.C. 9058(c)(1), the landlord could not invoke the subject matter jurisdiction of the municipal court and, correspondingly, the municipal court could not exercise jurisdiction over that particular action for forcible entry and detainer. *Id.* at ¶ 52.

**{¶ 32}** In *Garden Spires*, the New Jersey appellate court considered a case factually analogous to the one at hand, where the subsidized housing facility owner failed to serve recertification notices required under Chapter 7 of the HUD Handbook. Concluding that the trial court lacked jurisdiction as a result of the property owner's failure to properly notify the tenant, the appellate court was unpersuaded by the property owner's argument that any failure on the part of the property owner should be excused because, ultimately, the tenant failed to participate to the property owner's satisfaction in the recertification process itself. *Id.* at * 6. In support of its determination that a property owner's failure to comply with federal notification requirements must be regarded not as "technical noncompliance," but rather as "den[ying] the trial court jurisdiction," the court stated:

> The procedures set forth in the HUD Handbook are clear and straightforward and are detailed to protect the significant property right a tenant possesses to a Section 8 subsidized housing voucher, and the federal government's concomitant interests in ensuring an accurate and equitable distribution of those benefits. These procedures require a clear record that a landlord properly notified a tenant and memorialized those interactions. Proper notification and compliance are not satisfied by a post-hoc oral recertification process.

*Id.*

10.

{¶ 33} Here, there is no question that Hampton Court failed to provide notice of recertification on May 1, 2023. In fact, the uncontroverted record establishes that it was Ms. French who, on July 4, 2023, initiated contact with Hampton Court regarding the recertification. Moreover, the single written notice of recertification from Hampton Court that Ms. French did receive around the end of July did not indicate the documents that were needed for the recertification.

{¶ 34} Hampton Court does not dispute that Ms. French received only one recertification letter and, thus, Hampton Court appears to acknowledge that it was not in compliance with the notification requirements set forth in HUD Handbook 4350.3.

{¶ 35} Hampton Court argues by implication that its failure should be excused, however, because Ms. French failed to offer any authority to show "that failure to provide written notice relieves a tenant of her obligation to provide additional documentation when she's previously attended a recertification meeting, and has been repeatedly told of the need to provide additional documentation."

{¶ 36} We find Hampton Court's argument regarding Ms. French's alleged lack of compliance wholly unavailing in this case, because, just as in *Garden Spires*, Hampton Court's failure to properly notify Ms. French rendered Hampton Court unable to invoke the trial court's jurisdiction in the first place. And in the absence of jurisdiction, we simply cannot, and therefore do not, reach the merits of Hampton Court's eviction action.

11.

**{¶ 37}** For the foregoing reasons, appellant's third assignment of error is found well-taken. Because appellant's remaining assignments of error are now moot, we decline to address them.

### Conclusion

**{¶ 38}** The judgment of the Toledo Municipal Court, Housing Division, is reversed. Appellee is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.